SECURITY TRUST CO. et al. v. BANK OF BERNICE.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1917. Rehearing Denied March 20, 1917.)

No. 2947.

1. CHATTEL MORTGAGES ☞116—LIEN—PROPERTY SUBJECT.

A lumber company borrowed from a bank money to pay the wages due its laborers, and gave the bank a chattel mortgage on certain specifically described lumber. Thereafter a receiver was appointed in a suit to foreclose a mortgage on the lumber company's property, and the receiver was ordered to pay out of the proceeds of the sale of lumber and logs on hand the wages of the laborers, some of which had accrued before the chattel mortgage was executed, and some of which accrued thereafter. The bank intervened, and asked to have its chattel mortgage given a preference, and also asked to be subrogated to the lien of the laborers whose wages had been paid with the money loaned. The master's report, recommending payment to the intervener of the amount by which the sales of

the lumber and logs coming into the hands of the receiver exceeded the claims for wages due on the date the chattel mortgage was recorded, was confirmed by the District Court over the objections of the receivers that the amounts paid for wages exceeded the amount received from all the lumber and logs which came into the receivers' possession. Louisiana, Act No. 65 of 1912, provides that a chattel· mortgage on recordation becomes a lien on the property described superior in rank to any privilege or lien arising subsequently thereto. *Held*, that the bank was entitled only to the excess of the fund arising from the sale of the mortgaged lumber, not of all the lumber and logs coming into the hands of the receivers,· over the liens existing against that lumber at the time the chattel mortgage was recorded.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 198, 199.]

2. CHATTEL MORTGAGES ⟨⚬⟩138(1)—LIEN—PRIORITY—LOGGING LIEN.

Under Louisiana Act No. 145 of 1888, as amended by Act No. 52 of 1910 and Act No. 23 of 1912, giving laborers working in sawmills a lien on all logs, timber, or lumber manufactured in the mill for the payment of their wages, the lien attaches, at least as soon as the conversion into lumber is complete, so that a chattel mortgagee of the lumber acquires only an equity in the lumber above the amount of the liens.·

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 228, 229, 231–236.]

3. CHATTEL MORTGAGES ⟨⚬⟩157(1)—LIEN—APPORTIONMENT OF LABOR LIEN.

Where it is not possible to trace the labor which went into the production of the particular lumber covered by a chattel mortgage, the amount thereof may be determined as between the chattel mortgagee and the receiver of the mortgagor by apportioning to the quantity of the lumber covered by the mortgage the usual cost of labor in that mill for the production of an equal quantity of lumber.

4. LOGS AND LOGGING ⟨⚬⟩26(2)—LIEN—PERSONS ENTITLED—RAILROAD EMPLOYÉS.

Under Louisiana Act No. 145 of 1888,·giving all laborers employed by or working in sawmills a lien on the logs, timber, and lumber produced, the operatives of a logging railroad owned by a subsidiary corporation acquire no lien on the lumber produced if they contributed nothing in the way of labor in converting the standing timber into the mortgaged lumber.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 60.]

5. RECEIVERS ⟨⚬⟩162—PAYMENT OF WAGES—ORDER—EFFECT.

Where a receiver of a lumber company, in order to protect the property from violence, threatened by unpaid laborers· and to keep the mill in operation, applied for and received an order authorizing him to pay all claims for wages out of the proceeds of the sale of logs and lumber on hand, which claims would have had to be paid out of the corpus of the property if there had been no lumber or logs to sell, that order was merely intended to affect the interest of the mortgagee in corpus of the property, and did not preclude a chattel mortgagee from thereafter intervening and claiming the proceeds of the sale of the lumber covered by its chattel mortgage, subject only to the payment of the claims for wages which were liens on that lumber at the time the chattel mortgage was recorded.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 277.]

6. RECEIVERS ⟨⚬⟩162—INTERVENTION—ORDER—EFFECT.

An order in receivership proceedings upon the intervention of a chattel mortgagee, which allowed the intervener's claim and postponed for future determination the relative rank and priority of its mortgage, does not preclude the intervener from thereafter asserting its ownership to the lumber covered by its mortgage.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 277.]

⟨⚬⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of Louisiana; Aleck Boarman, Judge.

Suit by the Security Trust Company and others against the Summit Lumber Company and another, to foreclose a mortgage, in which the Bank of Bernice intervened and claimed a share of the funds in the hands of the receivers. From a decree directing the receivers to pay a portion of the intervener's claim, complainants appeal. Reversed and remanded, with directions.

This is an appeal from an order of the District Court for the Western District of Louisiana, entered in an intervention filed by the appellee, in a suit for the foreclosure of a mortgage, in which the appellant was the plaintiff and the Summit Lumber Company and the Arkansas & Northeastern Railroad Company were the defendants. The latter was a corporation, whose entire capital stock was owned by the former, and whose railroad was a plant facility for the former. Upon the filing of the foreclosure suit and at the instance of the plaintiff therein, receivers were appointed by the District Court, and qualified and took possession of all the assets of the mortgagor companies. Separate bills were filed—that against the lumber company in January, 1914, and that against the railroad company in February, 1914—but for the purposes of this appeal they may be treated as one. After the receivers had taken possession, they found that the wages of the operatives of the lumber company and of the railroad company had not been paid for the months of November and December, 1913, and January, 1914, and that for the preservation of the estate and for the purpose of continuing its operation as a going concern, it was essential for them to pay the past-due wages of such employés. The receivers thereupon applied to the District Court for an order authorizing them to pay such wages, out of the proceeds to be realized from certain logs and lumber, which had come into their possession. On March 3, 1914, this application was by the District Court referred to a master, who made his report on March 23, 1914, recommending that the labor claims, both of the lumber company and of the railroad company, be paid out of the logs and lumber in the hands of the receivers, or their proceeds, by preference. This report was confirmed by the District Court on April 22, 1914. On March 24, 1914, the appellee, the Bank of Bernice, intervened in the causes, setting out that on December 27, 1913, it had advanced to the Summit Lumber Company $5,000 for the purpose of paying labor claims for labor previously performed, to secure which the Summit Lumber Company had executed to it a chattel mortgage on 594,723 feet of lumber, situated in the lumber company's yard and specifically described in the chattel mortgage, so as to be capable of identification. The intervener prayed that its chattel mortgage be recognized and rendered executory on the lumber described in it, according to its rank, and subject to any prior or superior mortgages or liens, and also asked to be subrogated to any lien or privilege, which the laborers who were paid out of the proceeds of the advance might have had. This intervention was referred to the same master, whose report, filed October 12, 1914, recommended the allowance of the claim of intervener; that the chattel mortgage be recognized and rendered executory upon the lumber described in it, according to its rank, and subject to any prior or superior mortgages or liens; and denying the intervener any right to be subrogated to the lien of the labor claims, which the proceeds of the loan went to satisfy. This report was confirmed by the District Court on June 5, 1915.

On November 27, 1915, the Bank of Bernice, as intervener, caused to be served a rule on the receivers to show cause why they should not pay the intervener the $5,000, represented by the chattel mortgage, and asking for an order, on final hearing of the rule, directing the receivers to make such payment by preference and priority over all persons. The receivers answered, setting up, among other defenses, that under the former order of the court it had paid out more than all the proceeds realized from the sale of the logs and lumber upon wage claims; that they had only received a part of the lumber covered by the chattel mortgage; that the intervener was bound by

that order, having filed no opposition to the master's report on which it was founded, and was estopped by it to dispute the receivers' payments of the proceeds of the logs and lumber to wage claimants. The rule was referred to the same master by the court, who, after hearing the matter, reported, recommending that the receivers be directed to pay to the intervener the sum of $4,000, together with $364.70, intervener's share of the costs as ascertained by the master, that being the value of the part of the lumber, covered by the mortgage, as found by the master. On May 24, 1916, the District Court over-ruled the opposition filed by the receivers to the master's report, and directed the receivers to make payment to the intervener, as recommended. The appellant, the Security Trust Company, substituted by consent for the receivers, has taken the present appeal from that order.

Leon R. Smith and N. C. Blanchard, both of Shreveport, La., and Thomas G. Long, of Detroit, Mich., for appellants.

J. M. Foster, F. J. Looney, and W. A. Wilkinson, all of Shreveport, La., and Arnold Barksdale and J. D. Barksdale, both of Ruston, La., for appellee.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The appeal presents the question of the right of the appellee to be paid its claim out of the proceeds of the sale of logs and lumber, which came into the possession of the receivers, and which were disposed of by them. It does not appear from the record whether the mortgage, which was being foreclosed, included such logs or lumber or not. The receivers, under an order of court, claim to have paid the entire proceeds of such sales, and more, in satisfaction of labor claims due from the defendants at the time of the filing of the foreclosure suit, and claim protection under that order against further payment. The intervener claims that its chattel mortgage upon recordation became, by virtue of Act 65 of 1912 of the General Assembly of the state of Louisiana, a lien on the property described in it "superior in rank to any privilege or lien arising subsequently thereto"; that the unpaid labor claims on December 27, 1913, when the chattel mortgage was given, were enough less in amount than the proceeds of the sale of lumber manufactured prior to that date to leave a surplus in the hands' of the receivers from such proceeds, sufficient, after satisfying all labor claims then unpaid, to more than pay the amount of intervener's claim secured by its chattel mortgage. The master found this surplus to be sufficient to pay the portion of intervener's claim, represented by the value of the amount of lumber, which the master found came into the possession of the receivers, of that covered by the chattel mortgage.

[1] We are not satisfied that this was the correct way of determining the respective rights and priorities of the intervener and the appellant. Its effect was to treat the bank's lien under the chattel mortgage as if it were indistinguishably on the entire mass of lumber and logs that came into the possession of the receivers, when in fact and in truth it covered certain specific lumber described by items and located by piles numerically and readily ascertainable in specie. This being true, we think the respective rights of the parties should have been limited to and worked out through the specific lumber covered by the chat-

tel mortgage. The intervener should be charged with whatever prior liens or privileges the lumber covered by the chattel mortgage was subject to, when the intervener recorded its chattel mortgage on December 27, 1913. It was not chargeable with any lien or privilege, which the balance of the lumber then on the yard (not included in the chattel mortgage) or of logs subsequently manufactured into lumber, was subject to. We, therefore, think that the method of working out the equities of the parties through the mass of logs and lumber that came into the receivers' possession, instead of confining it to the lumber mortgaged in terms to the intervener was an erroneous one. The intervener lent its money on the security of certain lumber then in existence, described in its chattel mortgage. The question is what liens, if any, were on this specific lumber on December 27, 1913, when intervener took its chattel mortgage. Such, if any, as were, ranked the lien of the chattel mortgage. No subsequent ones could do so, nor could any liens, prior or subsequent, on lumber other than that described in the chattel mortgage.

[2] Act 145 of the Acts of the General Assembly of Louisiana of 1888, as amended by Act 52 of 1910, and Act 23 of 1912, confers on all managers, mechanics, or laborers employed by or working in sawmills, planing mills, or shingle mills a lien or privilege on all logs, square timber or lumber, and all material manufactured in such mills, where such managers, mechanics, and laborers are engaged or employed, for the payment of their salaries or wages. Under this legislation, the manufactured lumber covered by intervener's chattel mortgage was subject to a lien in favor of such managers, mechanics, and laborers as contributed to convert that specific lumber from standing timber into manufactured lumber, at least as soon as the conversion was complete. At the time the intervener's chattel mortgage was executed and recorded, the timber described in it had been so converted, and was therefore then subject to such labor liens. The intervener, therefore, took as its security, not the lumber, but the equity in it over and above the labor liens that had theretofore attached to it.

[3] It is true that it is not possible to trace the labor of each operative into this particular lumber and fix the separate amount due each such lienholder thereon, and so determine the aggregate. It is, however, possible to ascertain the usual cost of labor at this particular mill a thousand feet for converting timber into lumber, and the amount, so ascertained, applied to the quantity of lumber covered by the chattel mortgage, and which is shown to have come into the possession of the receivers, would give the amount of the labor liens, to which that portion properly was subject when the intervener accepted its chattel mortgage.

[4] If the operatives of the Arkansas & Northeastern Railroad Company contributed nothing in the way of labor in converting the standing timber into the mortgaged lumber, then no lien should be fastened on the lumber on that account. Only such labor as is within the description contained in Act 145 of the Acts of 1888, and which in fact contributed in some way to the conversion from standing timber to manufactured lumber of the mortgaged property, should be considered.

The receivers have paid all labor claims which were owing when they were appointed. The controversy is now between the Security Trust Company, as trustee under the mortgage sought to be foreclosed, and the intervener, as holder of the chattel mortgage. The impossibility of fastening a laborer's lien in favor of each laborer and in specific amounts, as between these contestants, is unimportant. The intervener should not be deprived of the security it bargained for, which was the equity in the mortgaged lumber, after satisfying the labor claims properly attributable to the lumber covered by its mortgage. The Security Trust Company should not cast on the intervener the burden of labor claims on the lumber other than that covered by the chattel mortgage, because the receivers were directed to pay all labor claims.

[5] We think that the order directing such payment was intended only to affect the interest of the Security Trust Company, it being the sole party to the record when the master reported recommending that the receivers make such payment, and that the court did not have in contemplation the claim of the intervener under the chattel mortgage to the lumber therein described, when it confirmed the master's report and directed the receivers to pay labor claims. The Security Trust Company, as trustee for the bondholders, had an interest in the payment of labor claims, in order to preserve the corpus of the estate and to keep it a going concern, that was wanting in the intervener. The order was made at its instance and for its benefit, and it would have been forced to pay the labor claims, even if there had been no lumber to resort to for that purpose.

[6] The effect of the order of the court, made upon the intervention of the Bank of Bernice, was to establish its claim and the chattel mortgage securing it and to postpone for future determination the relative rank and priority of its mortgage. We do not think that either or both of these orders precluded the intervener from asserting what rights, if any, it had to the lumber covered by its chattel mortgage, upon the hearing of the rule to show cause.

The situation of the defendant's (the Summit Lumber Company's) plant at the time the foreclosure suit was filed and the receivers appointed was such as to have made it necessary for the receivers to pay the past-due wages, even if there had been no fund other than the corpus to resort to for that purpose. The defendant had abandoned the plant, leaving the laborers on the premises three months in arrears, demanding payment, and threatening the destruction of the plant, if it was denied them. The plaintiff, representing the bondholders, applied for the appointment of receivers to take over the property and to operate it. It was absolutely necessary for the preservation, as well as for the future operation, of the plant to pay past-due wages. If there had been no lumber on hand subject to labor liens, the necessity would have been the same. In that event, it would have been proper for the District Court to have ordered their payment out of the corpus or out of the future earnings of the receivership, if there were any, by authorizing the issue of certificates to produce the ready money. This was, in fact, done, to anticipate the sale of the lumber, and the re-

ceivers now claim to have paid labor claims largely in excess of the amount realized from the subsequent sale of the lumber. Under these circumstances it was clearly proper for the court to have ordered the payment of all past-due wages, regardless of the sufficiency of the fund to be realized from the sale of lumber for that purpose, and although the corpus of the mortgaged estate would have to be resorted to in order to make such payments. The bondholders, through their trustee, could not ask for a receivership, and the operation of the property under it, without providing for the wage claims, first out of the proceeds of the lumber, and when they were exhausted, then out of the mortgaged estate. As it was proper and necessary for the receivers to have taken care of the wage claims, regardless of the insufficiency of the proceeds of lumber sales to that end, it seems unimportant whether it was primarily the duty of the receivers or of the intervener to bring such insufficiency, taking into consideration intervener's claim on part of the lumber, to the attention of the court. In any event, it would have been the duty of the receivers, under the order of the court, to have paid all the wage claims, relying for reimbursement on the proceeds of lumber sales, as far as they were available, and upon the corpus, in the event that the proceeds of the lumber sales fell short.

For the reasons assigned, the decree appealed from is reversed, and the cause remanded to the District Court, with directions that it be recommitted to the master to ascertain and report the amount due the intervener and to be paid to it by preference by the receivers, in pursuance of the rule herein prescribed, and for further proceedings in conformity herewith.

---

⬅═➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes