Nos. 4262, 4263
(Consolidated)

Second Circuit

RYLAND ET AL. v. BETTY JOYCE LBR. CO. (Pineville Lumber Co., Inc., et al. Interveners)
PINEVILLE LUMBER CO., INC., v. MAL-PASS (Johnson et al., Interveners)

(February 16, 1932. Opinion and Decree.)

White, Holloman & White and T. F. Hunter, of Alexandria, attorneys for plaintiffs, appellants J. P. Johnson et al.

Overton, Dawkins & McSween, of Alexandria, attorneys for defendant, appellee Pineville Lumber Company.

McGREGOR, J. In the beginning these suits, consolidated for purpose of trial and appeal, involved several conflicting claims, but these have been simplified somewhat by abandonment, so that the only question left to be determined by the court is whether the laborers' lien on lumber manufactured in a sawmill built and operated on leased premises is superior or inferior to the lessor's lien and privilege.

Harry Malpass, a resident of Rapides parish, was the owner of a sawmill company in Pineville, La., operated under the name of Betty Joyce Lumber Company. The sawmill and all its equipment, together with the premises on which it was built, were leased from Pineville Lumber Company, Inc. Under the terms of the lease contract, which was written, the lessee began operations on April 23, 1931, and the lease was to continue for a period of twenty-three months at a rental of $100 per month, payable monthly.

Malpass, or the Betty Joyce Lumber Company, depended solely upon logs bought from others to run the mill. Several different ones furnished him logs, both by railroad and log wagon delivery. Among those who sold and delivered logs to the mill were Joseph T. Ryland, Raymond Zerbe, and Thomas J. Tullis. Joseph Murray was employed as a foreman and general woods manager, and J. A. Walker furnished groceries. These five brought a joint suit for their respective claims and caused all the lumber and whatever equipment that belonged to Malpass to be

seized under a writ of attachment in suit No. 22,136 in the Ninth district court of Rapides parish, on May 18, 1931.

It appears that Malpass soon discovered that his sawmill venture was a failure and abandoned any further operation of the mill and left for parts unknown. On May 22, 1931, the Pineville Lumber Company, Inc., from whom Malpass or Betty Joyce Lumber Company leased the sawmill and premises, filed suit No. 22,146, wherein it sought to enforce its lessor's lien for twenty-three months at $100 per month, or $2,300.

On May 28, 1931, John P. Johnson, a laborer appearing in his own behalf for wages due him individually and as assignee of a number of other laborers, intervened in both suits Nos. 22,136 and 22,146, and prayed that his laborer's lien on all logs, lumber, and manufactured products for wages for himself, as well as for the various assignors named in his petition, be recognized as superior to all other claims against the defendant.

On June 23, 1931, Pineville Lumber Company, Inc., intervened in suit No. 22,136, styled Joseph T. Ryland et al. v. Betty Joyce Lumber Company, and prayed that its lessor's lien and privilege be recognized as superior to all other claims against the defendant.

Under the writ of attachment in suit No. 22,136, Joseph T. Ryland et al. v. Betty Joyce Lumber Company, there was seized two saws, some cross-ties and some lumber. On June 23, 1931, the plaintiffs in both suits and all the interveners appeared in suit No. 22,136 and prayed that all the property seized be sold at once by the sheriff pending the outcome of the various claims, and that the proceeds of the sale be held subject to the judgments thereafter to be rendered. In this petition it was admitted that no one but the landlord was claiming a lien and privilege on the saws, and it was asked, therefore, that these be appraised and sold separately from the lumber and cross-ties on which all the parties were pressing conflicting claims. Pursuant to this joint petition, the necessary order was signed and the property was sold for the following amounts, to-wit: Saws, $80; cross-ties, $33.35; lumber, $500.

The two cases and all the interventions were put at issue by the necessary appearances and answers. On November 5, 1931, by consent of counsel for all parties concerned, the cases were consolidated and tried as one case.

In suit No. 22,136 judgment was rendered in favor of all the plaintiffs against the defendant in the amounts prayed for. The demands of the interveners John P. Johnson et al. were rejected. There was further judgment in favor of the intervener Pineville Lumber Company, Inc., maintaining its provisional seizure and recognizing and enforcing its lessor's lien and privilege on all the seized property as being superior to any lien or privilege that the plaintiffs might have, and the sheriff was ordered to pay to it all the proceeds of the sale of the property by preference and priority over the plaintiffs.

In suit No. 22,146 there was judgment in favor of the plaintiff Pineville Lumber Company, Inc., against the defendant H. Malpasss, for the sum of $2,300, payable at the rate of $100 per month on the 23d day of each month, beginning May 23, 1931, and maintaining the writ of provisional seizure and recognizing and enforcing plaintiff's lien and privilege as lessor on all the property seized. The judgment specially declared plaintiff's lessor's lien to be superior in rank to the lien and

privilege asserted in the intervention of John P. Johnson, and the demands of the intervener were rejected. It was specially ordered that the proceeds of the sale of the seized property be paid by the sheriff to the plaintiff by preference and priority over all other persons and particularly the interveners.

Orders of devolutive appeal were granted to the plaintiffs Joseph T. Ryland et al., in suit No. 22,136, and to John P. Johnson, intervener in both suits. By consent of all parties, all appeals were combined in one record.

## OPINION

It is conceded by the appellants that the lessor's lien on the proceeds derived from the sale of the saws is superior to that of the laborers. It is also conceded that the vendor's lien asserted by those who furnished logs to the defendant is not enforceable. Therefore the only question before us is whether the laborers' lien on the manufactured products of the sawmill is superior to the lessor's lien on the same products.

The laborers' lien asserted in this case is derived from Act No. 23 of 1912, amending Act No. 52 of 1910 and Act No. 145 of 1888. This act provides in part as follows:

"That all managers, mechanics or *laborers* employed by or working in *saw mills,* planing mills, shingle mills, sash, door and blind factories, hoop mills, stave and box manufactories, *shall have a lien or privilege* on all logs, square timbers or *lumbers,* shingles, sashes, doors, blinds, hoops, staves, boxes and *all material manufactured in the saw mills,* planing mills, shingle mills, sash, door and blind factories, hoop mills, stave and box factories, where such managers, mechanics and laborers are engaged, or employed, for the payment of their salaries or wages; provided that this lien or privilege shall have no effect against bona fide purchasers of the said material, without previous notice." (Italics ours.) Section 1.

Counsel for appellants cite the case of Security Trust Company v. Bank of Bernice (C. C. A.) 239 F. 665, 668, in support of their contention that the laborers have a lien for the payment of their wages on the lumber manufactured in a sawmill where and when they are engaged and employed. In referring to this case in their brief they say:

"In this case the court held that a laborer's lien and privilege primed that of a holder of a chattel mortgage on part of the lumber, *even though some of the laborers' claims were for wages due after the chattel mortgage had been placed on the lumber.*" (Italics ours.)

This statement is erroneous and inaccurate. As we interpret the case, it holds directly the opposite. In passing upon the question as to whether any claim for labor arising subsequent to the recordation of the chattel mortgage would be superior to the chattel mortgage, the court said:

"This being true, we think the respective rights of the parties should have been limited to and worked out through the specific lumber covered by the chattel mortgage. The intervener should be charged with whatever prior liens or privileges the lumber covered by the chattel mortgage was subject to, when the intervener recorded its chattel mortgage on December 27, 1913. It was not chargeable with any lien or privilege, which the balance of the lumber then on the yard (not included in the chattel mortgage) or of logs subsequently manufactured into lumber, was subject to. We, therefore, think that the method of working out the equities of the parties through the mass of logs and lumber that came into the receivers' possession, instead of confining it to the lumber mortgaged in terms to the intervener was an erroneous one. The intervener lent its money on the security of certain lumber then in existence, described in its chattel mortgage. The question is what liens, if any, were on this specific lumber on December 27, 1913, when intervener took its chattel mortgage. Such, if any, as were, ranked the

lien of the chattel mortgage. No subsequent ones could do so, nor could any liens, prior or subsequent, on lumber other than that described in the chattel mortgage.

\* \* \*

"Under this legislation, the manufactured lumber covered by intervener's chattel mortgage was subject to a lien in favor of such managers, mechanics, and laborers as contributed to convert that specific lumber from standing timber into manufactured lumber, at least as soon as the conversion was complete. At the time the intervener's chattel mortgage was executed and recorded, the timber described in it had been so converted, and was therefore then subject to such labor liens. The intervener, therefore, took as its security, not the lumber, but the equity in it over and above the labor liens that had theretofore attached to it."

If there had been no chattel mortgage on a portion of the lumber in the above-cited case, the laborers' liens would have ranked first on all the lumber on the premises, but, since the lien created by the recordation of the chattel mortgage primed all liens subsequently arising, the lumber described in and subject to the chattel mortgage was not subject to the laborers' lien unless there should be a surplus left after satisfying the chattel mortgage. The recordation of the chattel mortgage cannot affect a lien that has already accrued. So the recordation of this chattel mortgage could have no effect on a lessor's lien. If the sawmill in question had been on leased premises, it could not be held that the recordation of the chattel mortgage could in any manner affect the claim of the owner for his rent for the reason that the lessor's lien would have already attached. In fact, this lien would have attached before any labor could have been performed to convert the logs into lumber. So, if the recordation of a chattel mortgage can and will defeat all subsequently arising laborers' liens, but cannot in the

remotest degree affect the lessor's lien already accrued, by the same process of reasoning, the laborers' lien does not and cannot affect the lessor's lien which attached to the logs out of which the lumber was manufactured as soon as they were placed upon the leased premises.

Counsel also cite the case In re Pleasant Hill Lumber Company, 126 La. 743, 52 So. 1010. In that case there was no question of the relative rank of the lessor's and laborers' liens. No lessor's lien was involved. All the court did was to recognize the lien as provided in the statute as against ordinary creditors. The receiver was endeavoring to defeat the strict enforcement of the laborers' lien by a so-called agreement under which he was contending that the laborers had waived their lien accorded to them by the statute, and the court rightfully refused to support him in this contention.

Counsel rely very strongly upon article 3267 of the Revised Civil Code, which reads as follows:

"If the movables of the debtor are subject to the vendor's privilege, or if there be a house or other work subjected to the privilege of the workmen who have constructed or repaired it, or of the individuals who furnished the materials, the vendor, workmen and furnishers of materials, shall be paid from the price of the object affected in their favor, in preference to other privileged debts of the debtor, even funeral charges, except the charges for affixing seals, making inventories, and others which may have been necessary to procure the sale of the thing."

This article of the Code was cited in the case of Carroll Lumber Company v. Davis, 133 La. 416, 63 So. 93, in which it was expressly held that the lessor's lien is superior to the privilege of the furnisher of material. The question of the relative rank as between the lessor's lien and that

of laborers is not presented in the case, but by analogy the same holding would apply. Furthermore, this article of the Code does not refer to all workmen, but it is restricted to those who work on a "house" or "other work." This "other work" is something "constructed or repaired," and it cannot be said that lumber manufactured in a sawmill has been either "constructed or repaired."

The rights of the laborers in this case are derived solely from Act No. 23 of 1912, and not from article 3267 of the Civil Code, which is cited by counsel. It is freely admitted that they have a privilege on the lumber manufactured in the sawmill, but, unless there is authority in the act creating the lien giving it a right superior to other liens already provided for before the enactment of this statute, those liens will be held to be superior. Article 3258 of the Revised Civil Code provides as follows:

"But the lessor has a preference on the price of these movables, over all the other privileged debts of the deceased, such as expenses of the last illness and others which have a general privilege on the movables."

This article plainly provides that the lessor's lien is superior to all other privileged debts. This is true in all cases except where special exceptions are made. An example of such exception is found in article 3259, which provides that:

"With regard to the crops which are subject to the lessor's privilege, the expenses for seed and labor, the wages of overseers and managers, are to be paid out of the product of the year, in preference to the lessor's debt. So, also, he who supplied the farming utensils, and who has not been paid, is paid in preference to the lessor out of the price of their sale."

Under this provision the farmers' lessor's lien is not outranked on anything found on the leased premises other than those items specially mentioned, viz., the product of the year and the utensils which may not have been paid for. Counsel for appellees have cited several articles of the Code and have discussed them by comparison in order to show the superior rank of the lessor's lien. We think that article 3258 is conclusive, and that it is useless to discuss the various articles dealing with the relative rank of other general privileges.

It is contended that it is an outrageous travesty on justice for laborers to be deprived of their right to look to the product of their own hands for relief. It is a hard situation which we cannot remedy. That situation, however, is no harder than it would be if the owner of the premises and machinery were required to contribute the use of his investment solely for the sake of providing wages for those who work through choice, depending upon the hope that their employer would, through their labor, earn enough to pay wages after paying the owner for the use of his equipment. Article 3263 provides that the lessor's lien shall prevail even over the vendor's lien. This, too, seems hard, and vendors without exception condemn it as being worse than outrageous. It must be remembered that all liens are strictly construed and enforced.

Since it is clear that the law has clothed the lessor's lien with a superior rank, it must prevail over the lien contended for by the appellants.

For the reasons assigned it is ordered, adjudged, and decreed that the judgments appealed from be, and they are, hereby affirmed; it is further ordered that the costs of this appeal be paid by the appellants, and that the costs of the lower court be paid as decreed in the said judgments.